## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

ATAIN SPECIALITY INSURANCE )
COMPANY, formerly known as USF )
INSURANCE COMPANY, )
                             )
         Plaintiff, )
vs. )            No. CIV-11-1379-D
                             )
TRIBAL CONSTRUCTION )
COMPANY; NATIVE AMERICAN )
SERVICES CORP.; and MILISSA )
LAWSON, Personal Representative of )
the Estate of Jason Lawson, Deceased, )
                             )
         Defendants. )

# O R D E R

This is an action between an insurer and its insureds concerning whether a particular

loss is covered under the relevant provisions of an underlying insurance policy. Before the

Court are Plaintiff Atain Speciality Insurance Company's ("Atain") Motion for Summary

Judgment [Dkt. # 46] and Defendant Native American Services Corp.'s ("NASCO") Motion

for Summary Judgment [Dkt. # 48], filed pursuant to Fed. R. Civ. P. 56(c). Atain seeks a

declaratory judgment that the Commercial General Liability Policy No. LGBGL92263

("CGL Policy") it issued to Defendant Tribal Construction Company ("Tribal"), and to which

NASCO was named an additional insured, does not provide coverage for the death of Jason

Lawson ("Lawson") because certain coverage exclusions apply. Atain seeks a declaration

that it does not have a duty to defend either Tribal or NASCO in any subsequent lawsuit

brought on behalf of Lawson's estate, and that it does not have a duty to indemnify either

Tribal or NASCO for any judgment that may be entered in connection with Lawson's death.

Conversely, NASCO asks this Court to find as a matter of law that the CGL Policy provides coverage for Lawson's death and to hold that Atain owes a duty to defend and indemnify NASCO, as its insured, in the underlying lawsuit filed by Milissa Lawson as Personal Representative of the Estate of Jason Lawson in the district court of Noble County, Oklahoma. The motions are fully briefed and at issue. For the reasons set forth herein, Attain's Motion for Summary Judgment [Dkt. # 46] is granted and NASCO's Motion for Summary Judgment [Dkt. # 48] is denied.

## I. Background

The following facts are uncontested, except where noted. Atain issued the CGL Policy at issue to Tribal on August 6, 2010. Pl.'s Statement of Material Facts ("Pl.'s Facts") at 1; Def.'s Resp. to Pl.'s Material Facts ("Def.'s Resp. to Pl.'s Facts") at 1. The CGL Policy was effective during the period from August 6, 2010, to August 6, 2011. *Id.* NASCO was added as an additional insured on August 30, 2010. *Id.* at 2. The instant dispute concerns whether the CGL Policy provides coverage for the death of Jason Lawson, an employee of a third-party company, who died on November 5, 2010, while delivering gravel ordered for use as backfill in a construction project undertaken by NASCO and Tribal to rehabilitate the sewer main at the Tribal Housing Complex for the Otoe Missouria Indian Tribe in Red Rock, Oklahoma. *See* Am. Compl. ¶¶ 10-14. Atain asserts that the CGL Policy does not provide coverage because one or both of two coverage exclusions apply: the Aircraft, Auto, or Watercraft Exclusion ("Auto Exclusion") and the Employees, Subcontractors, Independent Contractors, Leased Workers or Volunteers Exclusion ("Employee Exclusion"). *Id.* ¶ 16.

The parties do not dispute that the CGL Policy was in effect at the time of Lawson's death, or that Lawson sustained "bodily injury" within the "coverage territory." The sole question is whether the Auto Exclusion and / or the Employee Exclusion apply on the particular facts.

### A. The CGL Policy and the Relevant Exclusions to Coverage

The CGL Policy provides insurance coverage for "bodily injury" and "property damage" that is caused by an "occurrence" that takes places in the "coverage territory" during the policy period and to which the insurance applies.[1] *See* Pl.'s Mot. for Summ. J. ("Pl.'s Mot.") at Ex. 1. Coverage under the CGL Policy is subject to several exclusions, including an Auto Exclusion and an Employee Exclusion. *See id.* at Ex. 14, 15.

In relevant part, the Auto Exclusion provides:

> g.    Aircraft, Auto Or Watercraft
>
> This insurance does not apply to:
> . . .
> (2)    "Bodily injury" or "property damage" arising out of or in connection with any "auto".
> (3)    The "loading or unloading" of any . . . "auto" . . .
>
> This exclusion applies to "bodily injury" or "property damage" arising out of any . . . "auto" . . . , whether or not owned, maintained, used, rented, leased, hired, loaned, borrowed, or entrusted to others or provided to another by any insured.
> This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision,

---

[1] For covered losses, the CGL Policy provides that Atain will pay those sums within the policy limits that the insured becomes legally obligated to pay as damages and "will have the right and duty to defend the insured against any 'suit' seeking those damages." Pl.'s Mot. at Ex. 1. However, Atain "will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply." *Id.*

hiring, employment, entrustment, permitting, training or monitoring of others by an insured.

This exclusion does not apply to:

. . .

(3)     Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or any insured.

. . .

(5)     "Bodily injury" or "property damage" arising out of:

(A) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

(B) The operation of any of the machinery or equipment listed in Paragraph f. (2) or f. (3) of the definition of "mobile equipment."[2]

*See id.* at Ex. 14.  "Auto" is defined in the CGL Policy as:

a.     A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

b.     Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

*See id.* at Ex. 1.  However, the term "auto" does not include "mobile equipment," which

means any of the following types of land vehicles, including the attached machinery or

---

[2]  The machinery or equipment listed in Paragraph f. (2) and f. (3) of the definition of "mobile equipment" are "[c]herry pickers and similar devices mounted on automobiles or truck chassis and used to raise and lower workers; and [a]ir compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment."

equipment:

    a.    Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

    b.    Vehicles maintained for use solely on or next to premises you own or rent;

    c.    Vehicles that travel on crawler treads;

    d.    Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:
(1) Power cranes, shovels, loaders, diggers or drills; or
(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

    e.    Vehicles not described in Paragraph a., b., c., or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:
(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or
(2) Cherry pickers and similar devices used to raise and lower workers;

    f.    Vehicles not described in Paragraph a., b., c., or d. above maintained primarily for purposes other than the transportation of persons and cargo.

. . .

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

*See id.*

The Employee Exclusion exempts from coverage:

 e. Employer's Liability

  1. "Bodily injury" to an "employee", subcontractor, employee of any subcontractor, "independent contractor", employee of any "independent contractor", "leased worker", or "volunteer worker" of the insured arising out of and in the course of employment by or service to the insured for which the insured may be held liable as an employer or in any other capacity;

  2. Any obligation of the insured to indemnify or contribute with another because of damages arising out of "bodily injury" to an "employee", subcontractor, employee of any subcontractor, "independent contractor", employee of any "independent contractor", "leased worker", or "volunteer worker" of the insured arising out of and in the course of employment by or service to the insured for which the insured may be held liable as an employer or in any other capacity;

. . .

For the purposes of this endorsement, "independent contractor" means one that contracts to do work or perform a service for another and that retains control over the means or methods used in doing the work or performing the service.  "Independent contractor" includes, but is not limited to, subcontractors and any employees of a subcontractor, any employee of an independent contractor, and "employees" of the insured, agents, representatives, volunteers, spouses, family members of the insured or any Additional Insureds to this policy.
This exclusion applies to all causes of action arising out of "bodily injury" to any "employee", subcontractor, employee of any subcontractor, "independent

> contractor", employee of any "independent contractor",
> "leased worker", or "volunteer worker" by any person or
> organization for damages because of "bodily injury",
> including care and loss of service.

*See id.* at Ex. 15.

### B. Relevant Facts[3]

On September 13, 2010, NASCO contracted with the Indian Health Service to rehabilitate the sewer main at the Otoe Missouria Tribal Housing Complex in Red Rock, Oklahoma. *See* Pl.'s Mot. at Ex. 2.  NASCO, as general contractor, retained Tribal on October 18, 2010, as the primary subcontractor to carry out the project.  *See id.* at Ex. 2. Tribal purchased gravel and crushed rock from Sober Brothers, a company based in Ponca City, Oklahoma, to use as backfill in the construction project, and Sober Brothers delivered and unloaded the purchased materials on several occasions.  *See* Pl.'s Mot. at Ex. 4, Deposition Transcript of Tony Hutson ("Hutson Dep.") at 31:02-31:12; 35:11-36:16.

On November 5, 2010, two Sober Brothers' employees, Toby Hutson ("Hutson") and Lawson, drove semi-trailer dump trucks containing gravel and crushed rock to the construction site.  *See* Hutson Dep. at 48:10-49:20.  Each truck was fitted with a tarp to prevent loose materials from escaping the truck bed, as required by Oklahoma law.  *See id.* at 45:23-46:06; *see also* Okla. Stat. tit 47 § 105(B).  The tarp operates by a manual crank attached to the truck.  *See id.* at 58:10-62:05.  When the crank is engaged, a steel frame attached to the end of the tarp pivots into the air above the truck bed, moving from the rear

---

[3] As previously mentioned, the material facts are largely undisputed, except where noted in this Order.

to the front of the vehicle.  *See id.* at 60:02-61-05; 66:14-69:03; *see also* Hutson Dep. at Ex. 15.  The tarp must be removed before the contents of the truck bed can be unloaded.  *See id.* at 53:06-53:16.

Hutson arrived at the construction site first.  *See* Hutson Dep. at 49:21-50:06.  As was his customary practice, Hutson temporarily stopped his truck, set the brake, and exited the cab with the engine still running.  *See id.*at 53:06-53:22; 62:22-63:11.  He removed the tarp from the truck bed, and then sought instruction as to where he should unload the gravel.  *See id.*at 50:09-50:12; 53:06-53:22.  While Hutson ascertained where Tribal wanted the gravel dumped, Lawson arrived at the site and, similarly, exited his truck with the engine still running.  *See id.* at 56:04-56:10.  Hutson observed Lawson engage the manual crank to remove the tarp from his truck bed.  *See id.* at 64:19-64:21.  As Lawson operated the crank, the steel frame of the tarp removal apparatus rose into the air and came into contact with an over-hanging power line.  *See id.* at 64:22-65:16; 54:16-55:04.  As a result, Lawson was electrocuted, and, unfortunately, dies from his injuries.

On July 12, 2011, Milissa Lawson, administratrix of Lawson's estate, advised NASCO and Tribal in writing that she intended to seek damages for their alleged negligence surrounding Lawson's death.  *See* Pl.'s Mot. at Ex. 8-9.  NASCO and Tribal notified Atain of Milissa Lawson's intent to file suit, and Atain responded by filing the instant action, seeking a declaratory judgment that the CGL Policy does not provide coverage and asking this Court to hold that Atain has no duty to defend or indemnify its insureds, NASCO or Tribal, in any lawsuit arising from Lawson's death.  *See* Am. Compl. at 4.  Subsequently,

Milissa Lawson filed suit against NASCO and Tribal in the district court of Noble County, Oklahoma, alleging that both Defendants were negligent in failing to provide a safe construction area and for failing to warn Lawson of the presence of overhead power lines. *See* Pl.'s Mot. at Ex. 16.

Atain now moves for summary judgment [Dkt. # 46], which Defendants Tribal and Milissa Lawson[4] oppose [Dkt. # 54, 56], and NASCO has asserted a cross-motion for summary judgment [Dkt. # 48].

## II. Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for either party." *Id.* at 255.  Judgment as a matter of law is appropriate, therefore, when "the nonmoving party has failed to make a sufficient showing on an essential element of his or her case with respect to which he or she has the burden of proof." *Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  When applying this standard, all facts and reasonable inferences must be viewed in the light most favorable to the nonmoving party. *Fowler v. United States*, 647 F.3d 1232,

---

[4] Milissa Lawson responds to Atain's motion for summary judgment solely by adopting and incorporating the arguments contained in NASCO's response brief [Dkt. # 53].

1237 (10th Cir. 2011). If a party who would bear the burden of proof at trial lacks sufficient evidence on an essential element of a claim, all other factual issues concerning the claim become immaterial. *Celotex Corp.*, 477 U.S. at 322.

The movant bears the burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *Celotex Corp.*, 477 U.S. at 322-23. If the movant carries this burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex Corp.*, 477 U.S. at 324; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671; *see also* Fed. R. Civ. P. 56(c)(1)(A). "The Court need not consider only cited materials, but may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). The Court's inquiry is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

## III.  Analysis

The question before the Court is whether the Auto Exclusion and / or the Employee Exclusion apply on the particular facts. The parties concede that the applicability of either exclusion precludes coverage for Lawson's death under the CGL Policy. Plaintiff Atain contends that summary judgment is warranted because one or both exclusions apply as a matter of law; Defendant Tribal asserts that neither party is entitled to summary judgment

10

because there exists a genuine issue of material fact concerning whether either exclusion applies; and Defendant NASCO argues that it is entitled to summary judgment because neither exclusion applies as a matter of law.

Under well-settled Oklahoma law, insurance policies are contracts interpreted as a matter of law. *BP America, Inc., v. State Auto Property & Cas. Ins. Co.*, 148 P.3d 832, 835 (Okla. 2005) (*citing Dodson v. Saint Paul Ins. Co.*, 812 P.2d 372, 376 (Okla. 1991)). "The terms of the parties' contract, if unambiguous, clear, and consistent, are accepted in their plain and ordinary sense, and the contract will be enforced to carry out the intention of the parties as it existed at the time the contract was negotiated." *Dodson*, 812 P.2d at 376; *see* Okla. Stat. tit. 15 § 160 (2012).  Parties may contract for specific risk coverage and will be bound by policy terms. *American Economy Ins. Co. v. Bogdahn*, 89 P.3d 1051, 1054 (Okla. 2004). The Court may not rewrite insurance contracts, and "it is the insurer's responsibility to draft clear provisions of exclusion." *BP America, Inc.*, 148 P.3d at 836.  However, the Court will not "impose coverage where the policy language clearly does not intend that a particular individual or risk should be covered." *Id*.  Furthermore, "a split in authority over whether a certain term is ambiguous will not, in itself, establish an ambiguity nor will the fact that the parties disagree, as the issue is one of law for the Court." *Id*.

The determination of whether a contract is ambiguous is made only after applying the pertinent rules of construction. *See Dodson v. St. Paul Ins. Co.*, 812 P.2d 372, 376-77 (Okla. 1991); *State ex rel. Commissioners of Land Office v. Butler*, 753 P.2d 1334, 1336-37 (Okla. 1987).  The Oklahoma statutory rules of construction establish that: the language of a

contract governs its interpretation, if the language is clear and explicit and does not involve an absurdity (Okla. Stat. tit. 15, §§ 154, 155); a contract is to be taken as a whole, giving effect to every part if reasonably practicable, each clause helping to interpret the others (*id*. § 157); a contract must receive such an interpretation as will make it operative, definite, reasonable, and capable of being carried into effect (*id*. § 159); words of a contract are to be given their ordinary and popular meaning (*id*. § 160); and a contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates (*id*. § 163).  "The mere fact the parties disagree or press for a different construction does not make an agreement ambiguous.  A contract is ambiguous if it is reasonably susceptible to at least two different constructions."  *Pitco*, 63 P.3d at 545-56.  "The test for ambiguity is whether the language 'is susceptible to two interpretations on its face . . . from the standpoint of a reasonably prudent lay person, not from that of a lawyer.'"  *Bogdahn*, 89 P.3d at 1054 (quoting *Cranfill v. Aetna Life Ins. Co*., 49 P.3d 703, 706 (Okla. 2002)); *see also  Dodson*, 812 P.2d at 376-77.

As discussed below, applying these rules of construction leads the Court to find that there is no genuine issue of material fact concerning whether the Auto Exclusion in the CGL Policy applies to the instant facts.  It does apply, and accordingly, the Court finds that Atain is relieved of its duty to defend or indemnify Tribal or NASCO in any suit arising out of Lawson's death.  Finding the Auto Exclusion to apply as a matter of law, moreover, the Court need not – and does not –  reach the question concerning the applicability of the Employee Exclusion.

### A.  The Auto Exclusion Applies to Preclude Coverage Under the CGL Policy

Atain asserts that it is entitled to judgment as a matter of law because Lawson suffered bodily injury arising out of or in connection with an auto, including the loading or unloading of an auto, so as to trigger application of the Auto Exclusion to the CGL Policy.  Defendants[5] argue that the exclusion does not apply because: (1) the auto exclusion only applies to circumstances where the allegedly culpable behavior arises out of the use of an auto; (2) even if the auto exclusion does apply, Lawson's injury did not result from or arise out of the use of an auto; (3) Oklahoma's efficient proximate cause doctrine negates operation of the auto exclusion; (4) the doctrine of reasonable expectations requires finding coverage; (5) the truck was "parked" on property owned or rented by the insured at the time of the injury; and (6) the truck and / or the attached tarp removal apparatus are "mobile equipment."  The Court addresses and rejects each of the Defendants arguments in turn.

> 1.  <u>Whether the Auto Exclusion only applies in circumstances where the allegedly culpable behavior arises out of the use of an auto.</u>

NASCO asserts that the Auto Exclusion should not apply because the allegedly culpable behavior of the defendants – premises liability with respect to power lines – was unrelated to the use of any auto.  *See* NASCO's Resp. to Pl.'s Mot. for Summ. J. ("NASCO's Resp.") at 14.  Instead, NASCO argues that auto exclusions should only apply in cases where there are allegations of culpable behavior related to the use of an auto.  *Id.*

However, the Auto Exclusion at issue in this case – unambiguously and on its face –

---

[5] Defendants NASCO and Tribal responded separately to Atain's Motion for Summary Judgment. Collectively, they make six independent arguments against the application of the Auto Exclusion.

applies to "bodily injury . . . arising out of or in connection with any auto" without regard to whether an "auto" was used in a way establishing culpability or fault.  *See* Pl.'s Mot. at Ex. 14.  Reading an "auto-related liability" requirement into the CGL Policy's Auto Exclusion, *see* NASCO's Resp. at 16, would be tantamount to impermissibly rewriting the terms of the contract.  *See BP America, Inc.*, 148 P.3d at 836.  The Court will not impose coverage where, as here, "the policy language clearly does not intend that a particular individual or risk should be covered."  *Id*.  Accordingly, the Court finds that the CGL Policy's Auto Exclusion is not limited in its application to only those circumstances where the alleged source of liability is related to the use of an auto.  To hold otherwise would ignore the unambiguous terms of the parties' agreement.

2.  <u>Whether Lawson's injury actually resulted from or arose out of the use of an auto.</u>

Having determined that the CGL Policy exempts from coverage any bodily injury arising out of or in connection with any auto regardless of whether the alleged source of liability was auto-related, the Court next addresses whether Lawson's injury "ar[ose] out of or in connection with any auto."  Pl.'s Mot. at Ex. 14.

NASCO and Tribal assert that the Auto Exclusion should not apply because Lawson's injury did not result from the use of an auto.  NASCO argues that "Lawson could have been electrocuted any number of ways" and that the "Sober Brothers truck clearly did not

'produce' the injury in any meaningful way. . . . [I]t merely 'contributed' to cause the condition which produced the injury," such that the truck was the "mere physical situs of the electrocution event."  NASCO's Resp. at 21-22.  Tribal additionally argues that it was Lawson's use of the tarp and not the truck that caused his death, and that "[t]he mere fact that the tarp was attached in some way to the truck does not indicate that the accident arose from or was connected to the use of the truck."  Tribal's Resp. to Pl.'s Mot. for Summ. J. ("Tribal's Resp.") at 16.

The Court, however, finds that the defendants are mistaken in asserting that the question is whether an "auto" or an electric current *produced* Lawson's injury – clearly, Lawson was electrocuted.  The proper inquiry, as determined by the contractual language at issue, concerns whether Lawson's fatal injuries "ar[ose] out of or in connection with an auto" or an attachment thereto, including during the loading or unloading process.  Pl.'s Mot. at Ex. 14.  And under Oklahoma law, "the phrase 'arising out of' should be given a broad reading such as 'originating from' or 'growing out of' or 'flowing from' or 'done in connection with' – that is, it requires some causal connection to the injuries suffered, but does not require proximate cause in a legal sense."  *Federal Ins. Co.v. Tri-State Ins. Co.*, 157 F.3d 800, 804 (10th Cir. 1998) (applying Oklahoma law in the context of an automobile insurance policy dispute); *see also Oklahoma Farm Bureau Mut. Ins. Co. v. Mouse*, 268 P.2d 886, 889 (Okla. 1954) (noting that "if the cause of the injury was something physically attached to or immediately connected in some manner with the motor vehicle or its operation, the injury was held to be a result of the use of the vehicle").

15

Here, Lawson's truck was not "mere[ly] [the] physical situs of the electrocution event." NASCO's Resp. at 21-22. Lawson was operating the tarp removal apparatus attached to his truck as part of the process of unloading the truck, and, in so doing, caused that apparatus to come into contact with an overhead power line. The removal of the tarp was a necessary and integral part of the removal of the gravel and crushed rock from the truck, and the accident would not have occurred but for the need to unload the truck. As such, the Court finds that the accident arose out of, and occurred during the unloading of the truck, triggering application of the CGL Policy's Auto Exclusion.

### 3. Whether Oklahoma's efficient proximate cause doctrine negates operation of the Auto Exclusion.

Even if the Auto Exclusion applies on its face to preclude coverage, NASCO asserts that Oklahoma has adopted the efficient proximate cause doctrine for insurance policy interpretation, which negates its operation. Under this doctrine, "[i]f the insured successfully demonstrates that the proximate cause of the loss is covered by the policy, the entire loss is covered notwithstanding the fact that an event in the chain of causation was specifically excluded from coverage." *Duensing v. State Farm Fire & Cas. Co.*, 131 P.3d 127, 133 (Okla. Civ. App. 2006) (*citing Kelly v. Farmers Ins. Co., Inc.*, 281 F. Supp. 2d 1290, 1296 (W.D. Okla. 2003)). NASCO argues that the proximate cause of Lawson's injuries was the defendants' alleged negligence in failing to protect Lawson from coming in contact with dangerous power lines, which are allegations of premises liability and are covered by the CGL Policy. NASCO's Resp. at 23-24.

16

NASCO, however, concedes that parties may contract around the efficient proximate cause doctrine.  Indeed, the "foremost principle" of Oklahoma law governing insurance coverage disputes "is that an insurance policy is a contract," and the parties are generally "at liberty to contract for insurance to cover such risks as they see fit" and will be "bound by the terms of the contract." *Duensing*, 131 P.3d at 134 (finding specific language in the insurance policy to negate the efficient proximate cause doctrine); *see also* In *National American Ins. Co. v. Gerlicher Co.*, LLC, 260 P.3d 1279, 1288 (Okla. Civ. App. 2011) (same).  Here, the Auto Exclusion applies to "bodily injury . . . arising out of *or in connection with* any auto." Pl.'s Mot. at Ex. 14 (emphasis added).  The Court finds that the phrase "in connection with" reasonably encompasses  situations where more than one cause is involved in a loss, and the only fair and reasonable construction of that phrase in the context of the CGL Policy's Auto Exclusion is to negate operation of the efficient proximate cause doctrine.  By the express and unambiguous terms of the exclusion, the Court finds that the "policy language clearly does not intend"  for coverage to exist surrounding any bodily injury in connection with any auto regardless of whether that bodily injury is also connected to any other cause.  *See BP America, Inc.*, 148 P.3d at 836.

4. <u>Whether the doctrine of reasonable expectations necessitates finding that coverage exists.</u>

NASCO asserts that the Auto Exclusion contained in the CGL Policy at issue is a "non-standard exclusion" and its enforcement would violate the reasonable expectations doctrine.  NASCO's Resp. at 27.  "Under the reasonable expectations doctrine, the

objectively reasonable expectations of . . . insureds . . . concerning the terms of insurance contracts are honored even though painstaking study of the policy provisions might have negated those expectations." *Max True Plastering Co. v. U.S. Fid. & Guar. Co.*, 912 P.2d 861, 862-63 (Okla. 1996). "It may apply to the construction of ambiguous insurance contracts or to contracts containing exclusions which are masked by technical or obscure language or which are hidden in policy provisions." *Id.*

Here, the challenged language in the CGL Policy is an exclusion within the policy and, thus, the reasonable expectations doctrine may apply if the exclusion is masked by technical or obscure language or hidden in the policy's provisions. *See Max True Plastering Co.*, 912 P.2d at 863. Upon review of the Auto Exclusion contained in the CGL Policy, however, the Court finds that its enforcement does not offend the reasonable expectations doctrine. Although the CGL Policy's Auto Exclusion is admittedly broad in its scope and application, it is not masked in technical or obscure language, nor is it hidden in the policy's provisions. The Court rejects NASCO's argument that the Auto Exclusion should be unenforceable simply because it is "non-standard": *i.e.* broader in scope than auto exclusions contained in some other insurance policies. Non-standard provisions are not *per se* unenforceable because "[p]arties are at liberty to contract for insurance to cover such risks as they see fit and they are bound by the terms of the contract." *Bogdahn*, 89 P.3d at 1054 (*citing Wiley v. Travelers Inc. Co.*, 534 P.2d 1293, 1295 (Okla. 1974)). Accordingly, the Court finds that enforcement of the CGL Policy's Auto Exclusion does not implicate the reasonable expectations doctrine, and, therefore, the exclusion applies.

5.  <u>Whether the parking exception to the Auto Exclusion applies.</u>

Defendants assert that coverage exists because the parking exception to the Auto Exclusion applies here.  The parking exception provides that the CGL Policy's Auto Exclusion does not apply to "[p]arking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or any insured." Pl.'s Mot. at Ex. 14.

NASCO argues that Lawson's injuries occurred while he had his truck in the neutral gear with the parking brake set and that because parking is an undefined and thus ambiguous term in the CGL policy, the Court should construe it broadly and in favor of coverage.[6] NASCO's Mem. in Supp. of its Mot. for Summ. J. ("NASCO's Mem.") at 33-34.  Atain contends that the parking exception does not apply because Lawson's temporary stop does not fall within the definition of parking under the Oklahoma Highway Safety Code.  Pl.'s Cont. NASCO Reply at 4-5; *see* Okla. Stat. tit. 47 § 1-142 ("Park or parking means the standing of a vehicle, whether occupied or not, otherwise than temporarily for the purpose of and while actually engaged in loading or unloading merchandise or passengers.").

The Court cannot accept the overly broad definition of "parking" asserted by Defendants; to do so would effectively render the phrase "loading or unloading" in the Auto Exclusion meaningless.  *See, e.g., Dodson*, 812 P.2d at 376 (holding that an insurance contract must be construed "so as to give reasonable effect to all of its provisions").

---

[6]  That a word in an insurance policy is not defined within the policy does not necessarily render it ambiguous.  *Cranfill v. Aetna Life Ins. Co.*, 49 P.3d 703, 706 (Okla. 2002).

Regardless of the precise definition of "parking" as used in the CGL Policy, its definition cannot encompass the "loading or unloading" process because the Auto Exclusion explicitly exempts coverage for bodily injury arising out of or in connection with the loading or unloading of any auto. And having previously determined that Lawson sustained bodily injury while unloading his truck, the Court finds that the parking exception does not apply.[7]

      6.  <u>Whether the mobile equipment exception to the Auto Exclusion applies.</u>

Tribal asserts that coverage exists because the mobile equipment exception to the Auto Exclusion applies to the particular facts. Tribal argues that "[t]he apparatus used to roll up the tarp on the subject equipment meets the Atain Policy definition of 'mobile equipment' and, therefore, the Auto Exclusion does not apply." Tribal's Resp. at 18.

Tribal's argument, however, is unsupported and unpersuasive. First, Tribal fails to identify any portion of the CGL Policy where the definition of "mobile equipment" might be read to include an apparatus such as the one attached to Lawson's truck. Second, "Auto" is specifically defined in the CGL Policy to include ". . . a semitrailer designed for travel on public roads, including any attached machinery or equipment." Pl.'s Mot. at Ex. 1. The Court finds that the tarp removal apparatus, attached to Lawson's truck, falls squarely within the plain meaning of the CGL Policy's definition of "auto" and, therefore, the Auto Exclusion applies.

---

[7] Additionally, the parties dispute whether Lawson's truck was stopped on premises owned or rented by an insured. *See* Tribal Resp. at 17; Pl.'s Cont' NASCO Reply at 4-5. Having determined that the parking exception does not apply because Lawson was unloading and not parking his vehicle at the time of the incident, however, the Court need not address whether Defendants "owned' or "rented" the premises.

## IV.  Conclusion

For the foregoing reasons, the Court finds that the Auto Exclusion to the CGL Policy applies to preclude coverage for the injuries to and death of Jason Lawson.  In light of this determination, it is unnecessary to address the applicability of the Employee Exclusion. Accordingly, Atain's Motion for Summary Judgment [Dkt. # 46] is GRANTED, and NASCO's Motion for Summary Judgment [Dkt. # 48] is DENIED.

IT IS THEREFORE ORDERED that Atain is entitled to declaratory judgment that it has no duty to defend or indemnify either its named insured, Tribal, or its additional insured, NASCO, or any other person or entity, for any claims or in any lawsuit initiated by Milissa Lawson, or by any other person or entity in connection with the injuries to and death of Jason Lawson, which occurred on November 5, 2010.  Judgment shall be entered accordingly.

IT IS SO ORDERED this 13th day of December, 2012.

TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE